<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| ESTHER SHUSTER,<br><br>　　　　　*Plaintiff,*<br><br>　　　v.<br><br>UNITED STATES OF AMERICA, LAUREL BROOK REHABILITATION AND HEALTHCARE CENTER, JOHN DOES 1-10, ABC COMPANIES 11-20,<br><br>　　　　　*Defendants.* | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 24-8303-KMW-MJS<br><br>**OPINION** |

<u>APPEARANCES</u>:

Keith J. Gentes, Esq.
Mark R. Natale, Esq.
**MALAMUT & ASSOCIATES, LLC**
457 HADDONFIELD ROAD, STE. 500
CHERRY HILL, NJ 08002

　　　*Counsel for Plaintiff*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Esther Shuster ("Plaintiff") brings this action against Defendants Laurel Brook Rehabilitation and Healthcare Center ("Laurel Brook") and the United States of America ("Government," collectively "Defendants") alleging that Defendants' negligence in leaving a U.S. Postal Service bin out before the front desk caused Plaintiff to trip and fall, resulting in severe and permanent injuries.

This matter comes before the Court on Plaintiff's Second Motion for Default Judgment against Laurel Brook. (Dkt. No. 25.) Laurel Brook to date has not filed an appearance nor responded to the Complaint or the instant motion. For the reasons that follow, Plaintiff's Second Motion for Default Judgment is **GRANTED**.[1]

## II.    BACKGROUND

### A. Statement of Facts

On August 11, 2022, Plaintiff Esther Shuster, then a 59-year-old employee of Care Medical Transportation, was present at Defendant Laurel Brook's premises to pick up a patient for transport. (Certification of Counsel Regarding Computation of Plaintiff's Damages ("Gentes Cert.") ¶ 3, Dkt. No. 25-3; Compl. ¶¶ 13-14, Dkt. No. 1.) While seeking an access code at the front desk, Plaintiff tripped over a United States Postal Service bin that had been left on the floor, causing her to fall to the ground. (Compl. ¶ 14.) Plaintiff alleges that as a result of this incident, she sustained injuries to her wrists, hands, lower back, and left knee, as well as lower extremity radiculopathy. (Compl. ¶ 15-16; Genetes Cert. ¶ 4.)

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

2

Following the incident, Plaintiff sought medical treatment beginning the next day at Concentra and subsequently underwent approximately seven weeks of physical therapy. (Compl. ¶ 17.) Plaintiff thereafter continued treatment with specialists, including Dr. Kam Momi and Dr. Scott Jarmain of Coastal Spine in Mount Laurel, New Jersey. (*Id.* ¶ 20.) Diagnostic imaging of Plaintiff's lumbar spine revealed multiple disc herniations. Specifically, MRIs performed on October 17, 2022, December 26, 2023, and at Jefferson Health confirmed herniations at L3-4, L4-5, and L5-S1. (Gentes Cert. ¶ 10; *see also* Dkt. Nos. 25-4, 25-5.) Consistent with these findings, treatment notes from Coastal Spine reflect persistent complaints of lower back pain radiating into the lower extremities and limited range of motion with associated pain. (Dkt. No. 25-4 at 2–3.)

Plaintiff underwent extensive conservative and interventional treatment, including a series of L5-S1 epidural steroid injections, bilateral sacroiliac joint injections, bilateral L3, L4, and L5 medial branch blocks, and ultimately a radiofrequency ablation procedure of the bilateral L3, L4, and L5 levels. (Gentes Cert. ¶¶ 11–13.) Despite these interventions, Plaintiff continued to experience ongoing pain and functional limitations. Treating physicians noted that Plaintiff's symptoms persisted, including radiating lumbar pain and difficulty with physical activity. (Dkt. No. 25-4 at 2–3.)

As a result of her injuries, Plaintiff has been subject to physical restrictions, including limitations on lifting objects weighing more than 35 pounds and pushing objects exceeding 80 pounds. (Gentes Cert. ¶¶ 14, 17.) Plaintiff was also evaluated by Dr. Steven Kirshner of the Kirshner Spine Institute, who opined, to a reasonable degree of medical probability, that Plaintiff's lumbar spine injuries were causally related to the August 11, 2022 incident. (Dkt. No. 25-5 at 9.) Plaintiff's injuries have required ongoing treatment and have resulted in continued pain and impairment. Medical records reflect that Plaintiff reported significant and persistent lower back

pain, including pain exacerbated by activity and radiating into her lower extremities. (Dkt. No. 25-5 at 5–6.)

### B. Procedural History

This action was filed on August 6, 2024, asserting claims for negligence and premises liability arising from the August 11, 2022 incident. (Cert. of Counsel ¶ 2, Dkt. No. 25-1; *see* Compl. ¶ 13, Dkt. No. 1.) Laurel Brook was served with the Summons and Complaint on August 26, 2024. (Cert. of Counsel ¶ 3.) Laurel Brook failed to answer or otherwise respond within the time prescribed by the Federal Rules of Civil Procedure. (*Id.* ¶ 4.)

On April 23, 2025, Plaintiff requested entry of default against Laurel Brook, which the Clerk of Court entered on April 24, 2025. (*Id.* ¶¶ 6–7.) Laurel Brook has not appeared in this action or filed any responsive pleading. (*Id.* ¶ 8.) Plaintiff thereafter filed the instant Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (*Id.* ¶ 9.)

### III. LEGAL STANDARD

#### A. Federal Rule of Civil Procedure 55(b)(2)

Federal Rule of Civil Procedure 55 authorizes the entry of default judgment against a party that has failed to file a timely responsive pleading. Fed. R. Civ. P. 55(b)(2); *see also Dellecese v. Assigned Credit Sols., Inc.*, No. 15-6678, 2017 WL 957848, at *1 (D.N.J. Mar. 10, 2017). Rule 55 establishes a two-step process for obtaining a default judgment: (1) the party seeking default must obtain an entry of default by the Clerk of Court; and (2) once the Clerk of Court has entered the default, the party can seek a default judgment. It is within the discretion of the district court whether to grant a motion for default judgment. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (explaining that the entry of default does not automatically entitle the non-defaulting party to default judgment; rather,

the entry of default judgment is left primarily to the discretion of the district court). "Once a party has defaulted, the consequence is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp.*, No. 20-9537, 2021 WL 1541054, at*3 (D.N.J. Apr. 20, 2021). With respect to damages, the Court may order or permit the plaintiff to provide additional evidence to support their allegations. *Mancuso v. Tyler Dane, LLC*, No. 08-5311, 2012 WL 1536210, at *5 (D.N.J. May 1, 2012).

The moving party is not entitled to default judgment as a right; rather, the Court may enter a default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." *Dellecese*, 2017 WL 957848, at *2 (quoting *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012)); *see also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (stating that "this court does not favor entry of defaults and default judgments" and noting the Court's preference that cases be decided on the merits).

Accordingly, before granting default judgment, a court must determine: (1) it has jurisdiction both over the subject matter and parties; (2) determine whether the defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages. *See Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *3. Further, the Court must consider the additional following factors: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Id.* (quoting *Chamberlain*, 210 F.3d at 164) (internal quotations omitted).

5

## IV.    DISCUSSION

As set forth *supra*, obtaining a default judgment pursuant to Fed. R. Civ. P. 55 is a two-step process: first the Clerk of Court must enter a defendant's default after the properly served defendant failed to plead or otherwise defend itself. Once the entry has been made by the Clerk, a plaintiff can request the Clerk enter default judgment when a plaintiff's claim is for a sum certain, but in all other cases, such as the instant case, a plaintiff must apply to the court for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2).

Here, the Clerk of Court entered a default on April 23, 2025 against Laurel Brook for failing to plead or otherwise defend itself following the summons returned as executed on January 23, 2025. (Dkt. No. 5.) Since then, the docket reflects that Laurel Brook has not made an appearance or responded to this case to date. Thus, the first step is satisfied, and the Court will proceed to determine whether the entry of a default judgment is proper in this case.

### A.  Jurisdiction

"Before entering a default judgment as to a party that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *3 (quoting *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015)) (internal citations omitted). Thus, the Court must first determine personal jurisdiction over Laurel Brook, as well as subject matter jurisdiction, before it can proceed to any other aspect of the default judgment motion.

To establish personal jurisdiction over a company, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) (internal quotation omitted); *see also Griggs v. Swift*

6

*Transp. Co.*, No. 17-13480, 2018 WL 3966304, at *4 (D.N.J. Aug. 17, 2018) ("For a corporation or limited liability company, the 'paradigm' for general jurisdiction is its place of incorporation or registration and its principal place of business.").

Here, Plaintiffs allege that Laurel Brook is a "corporation registered to do business in the State of New Jersey, with its principal place of business at 3718 Church Road Mount Laurel," in Burlington County, New Jersey. (Compl. ¶ 9, Dkt. No. 1.) Therefore, this Court finds that it has general personal jurisdiction over Laurel Brook.

Moreover, the Court has specific personal jurisdiction over Laurel Brook. "Specific jurisdiction is attained when the controversy is related to or 'arises out of' a defendant's contacts with the forum." *Carter Ledyard & Milburn LLP v. Carrascosa*, No. 07-3216, 2010 WL 4609501, at *3 (D.N.J. Nov. 1, 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). There is a three-part test to determine whether specific jurisdiction exists. *Ross Univ. Sch. of Med. v. Amini*, No. 13-6121, 2014 WL 29032, at *5 (D.N.J. Jan. 2, 2014).

> (1) The defendant must have purposefully directed his activities at the forum;
> (2) the plaintiff's claim must arise out of or relate to at least one of those specific activities; and
> (3) courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice.

*Id.* (internal citations and quotations omitted). The Court will address each factor in turn below.

The Court notes that Laurel Brook owns and operates its business in Mount Laurel, New Jersey. (Compl. ¶ 9, Dkt. No. 1.) Given that the Court must accept Plaintiff's well pleaded factual allegations as true, *see Mancuso*, 2012 WL 1536210, at *2, the Court finds this evidence sufficient to determine that Laurel Brook purposefully directed its activities to this forum.

Next, it is clear on its face that Plaintiff alleges negligence arising from an injury that occurred on Laurel Brook's premises. (*See* Compl. ¶¶ 13-14.) The operation of Laurel Brook's business is the activity that it undertook in this forum. (*Id.*) Thus, the Court finds Plaintiff's allegations sufficient to determine that the claims of this case arise out of the activities Laurel Brook purposefully directed at this forum.

Further, the Court must ensure that its assertion of jurisdiction comports with the concepts of fair play and substantial justice. *Ross Univ. Sch. of Med.*, 2014 WL 29032, at *5 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). At this step, the burden would normally fall on the defendant to show that the assertion of jurisdiction is unconstitutional. *Id.* (citing *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992)). However, Laurel Brook has failed to appear in this case. Thus, the Court has carefully reviewed the record and has found no evidence to suggest that it would be unfair or against the concept of substantial justice to have Laurel Brook, a business located and operated within the State of New Jersey, answer a Complaint in a federal court based in its home state. Therefore, the Court finds that it has specific jurisdiction over Laurel Brook.

The Court has subject matter jurisdiction over Plaintiff's claims in that the claims are brought against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346. The Court may exercise supplemental jurisdiction over Laurel Brook pursuant to 28 U.S.C. § 1367 because Plaintiff's state-law negligence claim against it "forms part of the same case or controversy" as Plaintiff's FTCA claim against the Government under Article III of the United States Constitution, in that it arises from a common nucleus of operative fact. 28 U.S.C. § 1367(a); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Thus, the Court is satisfied that jurisdiction is met in this matter.

8

### B. Proper Service

The Federal Rules for executing service provide that "a domestic or foreign corporation, or a partnership or other unincorporated association . . . must be served in a judicial district of the United States, (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1); *see also* Fed. R. Civ. P. 4(e)(1) (authorizing service by "following state law for serving a summons . . . in the state where the district court is located or where service is made.").

Here, Plaintiffs filed their executed summons on January 23, 2025. (Dkt. No. 5.) The documents indicate that the managing agent, Debbie Means, was served successfully on January 23, 2025. (*Id.*) The summons was served by an adult without a direct interest in the litigation and declared that the above information was true and correct under penalty of perjury. (*Id.*) The Court is satisfied that proper service was made to Laurel Brook.

### C. Sufficiency of Causes of Action

Next, the Court must consider whether the undisputed facts provided in Plaintiff's complaint allege legitimate claims. *IBEW Loc. 351 Pension Fund v. George Sparks, Inc.*, No. 14-2149, 2015 WL 778795, at *1 (D.N.J. Feb. 24, 2015) ("The plaintiff's unchallenged facts set forth in the complaint must establish a legitimate cause of action before default judgment can be entered.") (citations omitted); *see also Mancuso*, 2012 WL 1536210, at *2. "A consequence of the entry of default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations omitted).

Here, Plaintiff alleges negligence against Laurel Brook. In actions alleging a personal injury under New Jersey law, Plaintiff must file within two years, which Plaintiff has done.

9

N.J.S.A. § 2A:14-2; *see also Acuna-Viales v. Pasquale*, Civ. No. 24-1048, 2024 WL 3272835, at *3 (D.N.J. July 2, 2024) ("New Jersey law gives litigants two years to file a personal-injury claim.") (internal quotation marks and citations omitted). Further, to sustain an action for personal injury under New Jersey law based on negligence, Plaintiff must allege (1) a duty of care; (2) a breach of that duty; (3) proximate cause for the injuries; and (4) actual damages. *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015); *see also Hattrich v. Neil*, 2018 WL 6596117, at *4 (N.J. Super. Ct. App. Div. Dec. 17, 2018) (requiring the plaintiff to establish proximate cause of an auto accident). In a motion for default judgment, the Court takes all facts as alleged as true, with the exception of Plaintiff's damages calculation. *Comdyne*, 908 F.2d at 1149. Here, Plaintiff has alleged that Laurel Brook negligently breached its duty to maintain its premises in safe condition because it knew of a dangerous condition it failed to remedy, causing Plaintiff's serious and permanent injury. (*See* Compl. ¶¶ 22-30.) Accordingly, the Court finds Plaintiff has sufficiently alleged personal injury due to Laurel Brook's negligence under New Jersey law.

### D. Appropriateness of Default Judgment

Finally, the Court must consider whether the entry of default judgment is proper in the context of the instant case. In making this determination, the Court must consider several additional factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 686 (D.N.J. 2015) (internal citations and quotations omitted).

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984). However, Laurel

Brook did not respond to this case, and such a failure prevents the Court from being able to ascertain any litigable defenses. *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (citing *Prudential Ins. Co of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)). Therefore, no meritorious defense presently exists with respect to deciding this motion for default judgment.

Next, Plaintiff will suffer prejudice by Laurel Brook's failure to respond, "because [she] has been prevented from prosecuting [her] case, engaging in discovery, and seeking relief in the normal fashion." *Innovative Sports Mgmt., Inc. v. Tumi Int'l, Inc.*, No. 20-14253, 2021 WL 4026112, at *3 (D.N.J. Sept. 2, 2021) (internal citations and quotations omitted). Additionally, without the remedy of default judgment, a plaintiff facing a defendant that refuses to engage will be prejudiced because it has "no other means of seeking damages for the statutory harms caused by Defendant." *Dellecese*, 2017 WL 957848, at *3. Here, Laurel Brook was properly served and has not appeared, and without entry of default judgment, Plaintiff would have no other means of redress against it.

Similarly, Laurel Brook's complete failure to answer or respond in this case "evinces the Defendant's culpability[.]" *Teamsters Pension Fund of Philadelphia & Vicinity v. American Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011); *Interstate Realty Mgmt. Co. v. PF Holdings, LLC*, No. 16-4095, 2017 WL 53707, at *3 (D.N.J. Jan. 4, 2017) (finding that a defendant "may be presumed culpable for their inaction."). There is nothing in the record to show that Laurel Brook's failure to respond was not willfully negligent, and therefore the Court is satisfied that such inaction supports a finding that Laurel Brook is culpable. *See Prudential Ins. Co. of America*, 2009 WL 536043, at *1.

11

As a result, the Court is satisfied that all factors support the entry of a default judgment and will grant Plaintiffs' motion.

### E. Damages

Having determined that entry of default judgment is appropriate, Plaintiff must prove damages. *See Comdyne*, 908 F.2d at 1149. The Court need not accept allegations as to damages as true under Rule 55(b). With respect to damages, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009); *see also Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) ("In determining the amount, the district court may conduct a hearing.").

However, this Court is not required to conduct a damages hearing "as long as it ensures that there is a basis for the damages specified in the default judgment." *Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund*, 2009 WL 3584358, at *3 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Courts have held that such hearings are unnecessary where, as here, "'detailed affidavits and documentary evidence' have been submitted to support the plaintiff's claim for damages." *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *3 (D.N.J. July 17, 2013) (citing *Tamarin v. Adam Caterers*, 13 F.3d 51, 54 (2d Cir. 1993)); *see also Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015) (finding affidavits and documentary evidence adequately proved the damages sought and awarding damages without conducting a hearing).

Here, the Court is satisfied that the quantity of damages that Plaintiff seeks, in the amount of $350,000.00, is adequately supported with reasonable certainty. Plaintiff's computation of damages is based on her pain and suffering and potential future medical expenses. (*See* Gentes

Cert. ¶ 22, Dkt. No. 25-3.) In support of Plaintiff's motion, Plaintiff has attached affidavits and medical documentation demonstrating that Plaintiff suffered multiple disc herniations at L3-4, L4-5, L5-S1, underwent a series of L5-S1 epidural steroid injections and an eventual bilateral SI joint injection, bitateral L3, L4, and L5 medical branch blocks, and a radiofrequency ablation surgery of her bilateral L3, L4, and L5 discs. (*Id.* ¶¶ 10-13 (citing Dkt. Nos. 25-4, 25-5).)

Plaintiff's lumbar spine surgeon, Dr. Kirshner, opined that Plaintiff's diagnosis is related to her work injury "based upon a reasonable degree of medical probability and certainty." (*Id.,* Attachment 2, Dkt. No. 25-5 at 8-9.) Plaintiff's medical documentation further demonstrates that as a result of her injuries, Plaintiff is "limited to lifting objects no more than 35 pounds and could not push object weighing more than 80 pounds." (*Id.,* ¶¶ 14, 17 (citing Dkt. Nos. 25-4, 25-5).) Plaintiff's counsel has also submitted a sworn affidavit opining that Plaintiff's damages are reasonable given the nature and extent of the injuries sustained. (*Id.* ¶ 22.) Based upon the foregoing, the Court finds that Plaintiff has provided adequate proof of the damages at issue here. *See Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund,* 2009 WL 3584358, at *3; *see Moroccanoil, Inc.,* 2015 WL 6673839, at *2.

Accordingly, judgment shall be entered against Laurel Brook in the amount of $350,000.00.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment (Dkt. No. 25) is **GRANTED**. An order consistent with this Opinion will be entered.

Dated: April 22, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE